THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| PATRICK RYAN BOWDEN,<br><br>Plaintiff,<br><br>vs.<br><br>NANCY BERRYHILL,<br>**Acting Commissioner of Social Security,**<br><br>Defendant. | Civil Action Number<br>4:18-cv-0983-AKK |

## **MEMORANDUM OPINION**

Patrick Bowden brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). The court finds that the Administrative Law Judge's ("ALJ") decision—which has become the decision of the Commissioner—is not supported by substantial evidence. Thus, the ALJ's decision is due to be remanded.

## I.  Procedural History

Bowden, who has no past relevant work experience, filed an application for Supplemental Security Income on May 1, 2015, alleging a disability due to high blood pressure, posttraumatic stress disorder ("PTSD"), Asberger's Syndrome, Bipolar Disorder, Depression, Agoraphobia, and Von Willebrand's Disorder. R.

1

158, 183. After the SSA denied Bowden's claim, R. 117, he requested a hearing before an ALJ, R. 124. The ALJ subsequently denied Bowden's claim. R. 6–22. The Appeals Council affirmed, rendering the ALJ's decision the final decision of the Commissioner. R. 1–5. Having exhausted his administrative remedies, Bowden filed this action pursuant to 42 U.S.C. § 405(g). Doc. 1.

## II. Standard of Review

The court reviews the ALJ's factual findings under the substantial evidence standard. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Substantial evidence "is more than a scintilla, but less than a preponderance: it is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). If supported by substantial evidence, the court must affirm the ALJ's factual findings even if the evidence preponderates against those findings. *Id*. The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for the ALJ's. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, the court must review the entire record, including the parts unfavorable to the ALJ's decision, to determine whether substantial evidence exists in support of that decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

In contrast, the court reviews *de novo* whether the ALJ applied the correct legal standard. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). In this way, the court's review of the Commissioner's decision is "demarcated by a

2

deferential reconsideration of the findings of fact and an exacting examination of the conclusions of law." *Martin*, 894 F.2d at 1529.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)–(f). Specifically, the ALJ must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Commissioner;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy, based on his residual functional capacity.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer

to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* (citing 20 C.F.R. § 416.920(a)–(f)). The claimant has the burden of proof for the first four steps, but the burden shifts to the Commissioner for the fifth step. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

## IV. The ALJ's Decision

In performing the five-step analysis, the ALJ found that Bowden had not engaged in substantial gainful activity since his application date, and, therefore, met step one. R. 11.

Next, the ALJ found that Bowden satisfied step two because he suffers from the following severe impairments: "depression, panic disorder, bipolar disorder, agoraphobia, [ADHD], and Asperger's disorder." *Id.* The ALJ concluded that other alleged impairments do not qualify as severe. R. 11–12. Notably for this appeal, the ALJ did not credit the consulting examiner's diagnosis of PTSD, finding that the diagnosis is not supported by Bowden's treating mental health records. R. 12.

Proceeding to step three, the ALJ determined that Bowden "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." *Id.* Because Bowden's impairments do not equal a listed impairment, the ALJ continued to step four. *See McDaniel*, 800

4

F.2d at 1030 (explaining that if a claimant meets a listed impairment, he or she automatically qualifies for a finding of disability).

At step four, the ALJ found that Bowden has the residual functional capacity (RFC) to perform "a full range of work at all exertional levels but with the following non-exertional limitations:"

> the claimant would be limited to the understanding, remember[ing], and carrying out [of] simple instructions; if afforded mid-morning, lunch, and mid-afternoon breaks, those activities can be . . . sustained for 2-hour periods and[,] therefore, can be sustained over an 8-hour day; decision-making and changes should be occasional in nature as should interaction with coworkers and supervisors; however[,] interaction with the public should be infrequent, or less than occasional.

R. 14. The ALJ held that Bowden "has no past relevant work." R. 17.

Lastly, at step five, the ALJ considered Bowden's "age, education, work experience, and residual functional capacity," and determined that "there are jobs that exist in significant numbers in the national economy that [Bowden] can perform." *Id.* For that reason, the ALJ concluded that Bowden "has not been under a disability, as defined in the Social Security Act," since his application date. R. 18.

## V. Analysis

Bowden raises two issues on appeal. First, he says the ALJ should have ordered an additional consult by a qualified medical examiner. Doc. 11 at 12–15. Second, he argues that substantial evidence does not support the ALJ's finding that he has no exertional limitations. *Id.* at 16. The court will address each contention

5

in turn.

    A.    Additional Consult by a Qualified Medical Examiner

In his decision, the ALJ rejected some of the opinion evidence offered by a consulting examiner. R. 12, 15–17. Bowden's position is that, after rejecting this evidence, the ALJ should have ordered an additional consult by a qualified medical examiner. Doc. 11 at 12–15. The court will begin with some context.

After Bowden filed his application, the Disability Determination Service referred him to Dr. Jack Bentley, Ph.D., for a mental examination. R. 275. Dr. Bentley personally examined Bowden and reviewed his medical records. R. 276–78. Based on his evaluation, Dr. Bentley diagnosed Bowden with PTSD, Major Depressive Disorder, and chronic knee pain. R. 277. Dr. Bentley also offered his opinion on Bowden's work limitations:

> Based on the results of this examination . . . the patient would have a marked limitation in his ability to sustain complex or repetitive work related activities. His impairment level for simple tasks would fall in the mild range. His excessive anxiety, racing thoughts and lack of coping skills would appear to substantially restrict his ability to perform tasks requiring sustained attention. From a psychiatric standpoint, there does not appear to be any significant limitations in his ability to perform simple work-related activities.

R. 278. Dr. Bentley added that an "appropriately trained physician" would need to evaluate whether Bowden's history of knee pain imposed any other restrictions. *Id.*

The ALJ rejected Dr. Bentley's diagnosis of PTSD. R. 12, 16. He noted that Dr. Bentley is a licensed counselor, rather than a psychologist, R. 12, and that

consequently Dr. Bentley is not an "acceptable" medical source under the federal regulations. 20 C.F.R. § 404.1527(c). The ALJ then explained that he would not credit the PTSD diagnosis because it was not consistent with Bowden's treatment records, "where no such diagnosis is found." R. 12.

As for Dr. Bentley's other findings and opinions, the ALJ gave them "partial weight" and looked to see whether they were consistent with the other evidence in the record. R. 16. In the end, the ALJ largely credited Dr. Bentley's other findings, deciding that Bowden was limited to simple tasks and needed breaks to maintain attention. R. 14. For this reason, the court presumes that Bowden's issue is with the ALJ's rejection of his PTSD diagnosis.

Bowden says the ALJ should have ordered an additional consult, arguing that it was unfair for the Commissioner to refer him to a counselor who the ALJ then disregarded as unqualified. First of all, to the extent that Bowden suggests the Commissioner should only refer claimants to acceptable medical sources, the court disagrees. The law contemplates that medical sources other than "acceptable" ones are appropriate to assist with disability determinations. 20 C.F.R. §§ 404.1527(f), 416.927(f). The regulations provide that physicians and licensed psychologists are "acceptable medical sources," while licensed counselors are not. *See* 20 C.F.R. §§ 404.1502(a), 416.902(a). Though the opinion of an acceptable medical source is entitled to more weight, *see Falge v. Apfel*, 150 F.3d 1320, 1324 (11th Cir. 1998),

7

the ALJ still must consider the opinion of other medical sources and evaluate that opinion in light of various factors, including whether it is consistent with the rest of the evidence. 20 C.F.R. §§ 404.1527(f), 416.927(f). It would be odd for the regulations to explain in this manner how other medical sources should be evaluated if they are supposed to be off-limits to the Commissioner.

Having established that it was appropriate to obtain a consult from Dr. Bentley, even though he is not an acceptable medical source, the court turns to the question of whether the ALJ should have obtained an additional consult. The ALJ has a duty to develop the record, including ordering a "consultative examination when such an evaluation is necessary for the [ALJ] to make an informed decision." *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1519a. But additional expert testimony is usually unnecessary when the record already contains "the opinions of several physicians." *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). Before the ALJ was the opinion of Dr. Bentley, a consulting counselor who examined Bowden, R. 276–78; the opinion of Dr. Estock, a consulting physician who did not examine Bowden, R. 84–91; and Bowden's treatment records, which included notes from his therapist and treating physicians, R. 280–386. The court is satisfied that the ALJ had sufficient information to make an informed decision.

The problem is that the ALJ misread the evidence. The ALJ rejected the

8

PTSD diagnosis because he found that it was not consistent with the rest of the evidence. R. 12, 16. Specifically, the ALJ said there was no diagnosis of PTSD in Bowden's treatment records. *Id.* But, contrary to this finding, the record shows that Bowden's treating physician diagnosed him with PTSD. R. 314–15. In particular, in early 2015, Bowden's physician referred him to CED Mental Health Service Center. During his intake, Bowden reported that he had experienced an "extremely traumatic event," and that he still suffered from nightmares and flashbacks. *See* R. 310–11, 313. Consequently, the "Medical Doctor or Licensed Psychologist" diagnosed Bowden with PTSD. R. 314–15.

It is hard to argue that the ALJ's decision is supported by substantial evidence when the only evidence the ALJ noted to support his finding says the opposite of what the ALJ represented. *See Woodruff v. Berryhill*, 2018 WL 529959 at *5 (N.D. Ala. 2018). Both the consulting counselor, Dr. Bentley, and the treating physician diagnosed Bowden with PTSD. Only the consulting physician, Dr. Estock, who did not examine Bowden, declined to diagnose Bowden with PTSD. And the opinion of a non-examining consultant cannot itself constitute substantial evidence to contradict the opinion of a treating physician. *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991); *see also Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1093–94 (11th Cir. 1985). Of course, the ALJ did not argue that Dr. Estock's

opinion should trump the treating physician; he simply made a mistake.

Though this error may ultimately prove to be harmless, the law is clear that it is not the place of this court to reweigh the evidence. *Bloodsworth*, 703 F.2d at 1239. The court would have to add the effects of Bowden's PTSD to the mix and ask whether this reconfigured combination of impairments equals the severity of a listed impairment. The court would also have to consider whether Bowden's PTSD affects his RFC. Such determinations are firmly in "the province of the ALJ," *Moore*, 405 F.3d at 1212, and the court must remand.

> B. <u>Exertional Limitations</u>

Bowden contends that substantial evidence does not support a finding that he has no exertional limitations. Doc. 11 at 16. Exertional limitations affect a person's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(a). These limits affect abilities such as "sitting, standing, walking, lifting, carrying, pushing, and pulling." *Id.* Non-exertional limitations, in contrast, largely pertain to mental abilities. *See id.* at § 404.1569a(c).

Relevant here, Bowden does not specify what exertional limits the ALJ should have found. He merely references an excerpt from Dr. Bentley's opinion, *see* doc. 11 at 16, which relates solely to non-exertional limitations except for the following comment: "Additional restrictions based on his history of knee pain would need to be assigned by an appropriately trained physician." R. 278. The court thus presumes

that Bowden thinks the ALJ should have found an exertional limitation based on his chronic knee pain.

Bowden's treatment records show that he has a history of right knee pain, *see, e.g.*, R. 317, which he told Dr. Bentley stems from a bicycle accident in his youth, R. 276. Still, the ALJ concluded that the evidence did not show the pain resulted in "any significant physical limitation or even persistent pain." R. 11. After all, as the ALJ noted, Bowden frequently took walks with his dog to the river, and even went kayaking one weekend. R. 293–97. Plus, in the treatment records from Quality Life covering roughly 2015 to 2017, the court sees little to no mention of knee pain to his physician. R. 316–83. Given these facts, the court holds that substantial evidence supports the ALJ's finding that Bowden's knee pain "cannot reasonably be expected to produce more than minimal, if any, work-related limitations." R. 11–12.

## VI. Conclusion

The Commissioner's final decision is **REMANDED** for the ALJ to make a disability determination in light of the evidence of PTSD in the record. The court will enter a separate order in accordance with this opinion.

**DONE** the 29th day of September, 2019.

*/s/ Abdul Kallon*
ABDUL K. KALLON
UNITED STATES DISTRICT JUDGE